## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| The United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-285-JFH |
| | ) | |
| Servando Espinoza-De Paz, | ) | |
| Marco Dewayne Phillips, | ) | |
| Mark Allan Allison, | ) | |
| Tomas Mondragon, | ) | |
| Alicia Kozikuski, | ) | |
| Samuel Gaona Gonzalez, | ) | |
| Israel Martinez Gallegos, | ) | |
| Jose Manuel Villafan Luviano, | ) | |
| Joseph Rodriguez, | ) | |
| Daniel Charles Hilger, | ) | |
| Ronell Deer McLemore, | ) | |
| Daniel Keith Bowers, | ) | |
| Gary Peden, | ) | |
| Orville McCalister, | ) | |
| Jennifer J Gallagher, | ) | |
| Allen Dwayne Goff, | ) | |
| Brandi Dennise Hall, | ) | |
| Jennifer Lynn Easley, | ) | |
| Dustin Anthony Hughart, | ) | |
| Donna Kay Mobley, | ) | |
| Kevin Keith Hill, | ) | |
| Jeffrey Scott Strathe, | ) | |
| | ) | |
| Defendants. | ) | |

## Defendant Marco Dewayne Phillips's
## Motion to Suppress Wiretap Evidence
## and Brief in Support

Pursuant to the Fourth Amendment to the Constitution of the United States of America, and 18 U.S.C. § 2518(10)(a)[1], Defendant Marco Dewayne Phillips (hereinafter referred to as "Mr. Phillips") hereby  moves to suppress all telephone calls to which he was a party.

A brief in support of this motion is set forth below.

### Introduction

### The Relevant Taps

There is one application to tap one phone number at issue here: (702) 506-_ _76. The application for that tap, the affidavit filed therewith,  and the order granting the tap are attached hereto as Exhibits "1", "2", and '3" respectively.

### Wiretap Law

### Generally

American jurisprudence rightly and strongly disfavors the wiretap:

"The evil incident to invasion of the privacy of the telephone is far greater than that involved in tampering with the mails. Whenever a telephone line is tapped, the privacy of the persons at both ends of the line is invaded, and all conversations between them upon any subject, and although proper, confidential, and privileged, may be overheard. Moreover, the tapping of one man's telephone line involves the tapping of the telephone of every other person whom he may call, or who may call him. As a means of espionage, writs of assistance and general warrants are but puny instruments of tyranny and oppression when compared with wire tapping."

Olmstead v. United States, 277 U.S. 438, 475-76 (1928) (Brandeis, J., dissenting);

"Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices. Some may claim that without the use of such devices crime detection in certain areas may suffer some delays since eavesdropping is quicker, easier, and more certain. However, techniques and practices may well be developed that will operate just as speedily and certainly and -what is more important- without  attending illegality."

Berger v. New York, 388 U.S. 41, 63 (1967).

---

[1]*See also* 18 U.S.C. § 2515.

The "Wiretap Act" (18 U.S.C. §§ 2510-2522)[2], authorizes certain law enforcement officers, under certain specified conditions, to spy on the citizens they are sworn to protect by secretly listening to their phone calls. For purposes of the Wiretap Act, this is accomplished by surreptitiously using electronic means to gain access to the signals utilized in and necessary for telephonic communication (cellular, landline, satellite telephone, or otherwise).

The Wiretap Act requires that a law enforcement officer who desires to spy on someone's private conversations  pursuant to the Wiretap Act must satisfy three procedural requirements. The officer must first obtain administrative approval from within the Department of Justice.  If and when the officer obtains administrative approval from within the Department of Justice, the officer may then apply to a federal judge for a wiretap.  The officer must then present a written application to a federal judge, which sets forth some fairly specific material. The judge must make certain findings and issue an order containing specified items.

### Necessity

One such item required to be set forth in the application and in any order granting such an application, is that the wiretap is necessary; such an application and an order granting it must state and explain why:

"... normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed or to be too dangerous."

(18 U.S.C. § 2518(3)(C)).

---

[2]Ironically enough, Wiretap Act's stated purpose was largely to *enhance* privacy: "Title III has as its dual purpose (1) protecting the privacy of oral and wire communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of oral and wire communications may be authorized." *See* U.S. v. Jones, 542 F.2d 661, 668 (6th  Cir. 1976)(quoting S.Rep. No. 1097, reprinted in U. S. Code Cong. and Admin. News, 1968, 90th Cong., 2d Sess., at 2153.

"The statutory language suggests that before finding that a wiretap is necessary, the court must find that alternative methods have been tried or would not have succeeded."

United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir. 1985).

In this case the necessity requirement was not met, and that requires suppression.

### The "Necessity" Requirement Wasn't Met

As set forth above, the wiretap statute requires that an application seeking to

spy on peoples' telephone calls prove that "... normal investigative procedures have been tried and

have failed or reasonably appear to be unlikely to succeed or to be too dangerous."  18 U.S.C. §

2518(3)(C)).  This is known as the "necessity[3]" requirement:

"The statute contains a 'necessity' requirement, under which the officer must establish and the court must find that 'normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.' 18 U.S.C. § 2518(3)(c)."

U.S. v. Iiland, 254 F.3d 1264, 1267 (10th Cir. 2001).

The statute mandates that the intrusive implement of wiretapping be ***necessary*** to achieve

the objective at hand - - not that wiretaps be more convenient, or be more likely to work, than

police tactics exhibiting more regard for the privacy rights of the citizens the police exist to protect:

"The plain effect of the detailed restrictions of section 2518 is to guarantee that wiretapping or bugging occurs only when there is a genuine **need** for it and only to the extent that it is **needed**."

Dalia v. U.S., 441 U.S. 238, 250 n. 9 (1979)(emphasis added);

"those statutory requirements that directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device."

---

[3]The United States Supreme Court has emphasized that the government should **strictly adhere** to the requirements of the wiretap statute. U.S. v. Donovan, 429 U.S. 413, 440 (1977)(emphasis added).

United States v.Giordano, 416 U.S. 505, 527 (1974);

**[the necessity requirement]"...is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime**."

U. S. v. Kahn, 415 U.S. 143, 153 n. 12 (1974)(citing S.Rep.No.1097, 90th Cong.,

2d Sess., 101, U.S.Code Cong. & Admin.News 1968, p. 2112))(emphasis added);

"The necessity requirement 'directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for [their] employment....'"

U.S. v. Mondragon, 52 F.3d 291, 294 (10th Cir. 1995), *citing* Donovan, 429 U.S. at 433–34, 97 S.Ct. at 671).

Wiretaps are an extraordinary intrusion on privacy, and are therefore permissible only when nothing else is going to work.  The application for the tap in this case falls short of meeting that rigorous standard.

### Problems Common to Most Investigations Do Not Constitute Necessity

The affidavit in support of the application for the tap in this case demonstrates only the generic problem that traditional investigative techniques might not readily disclose  every possibly useful fact the police want to find out.  The application seeks  to solve that problem (as most do)  by the simple expedient of  stating a broad investigative purpose:

"...67. The ultimate objective of this investigation is to **obtain evidence needed** to

**prosecute** the Targets, and other unknown members of the AGUIRRE-URQUIZA DTO, **to**

**the fullest extent possible**...."

(Exhibit "2", P. 30, Paragraph 67)(emphasis added);

"...the purpose of the investigation is to identify, locate, and arrest all persons responsible

for importation and distribution of the above described shipments of drugs."

(Exhibit "2", P. 48, Paragraph 131).

That tactic will not suffice:

"[T]hat traditional investigative methods do not reveal [everything the
government seeks is a] generic problem[]of police investigation. Th[at] generic nature does not
dissipate simply because the government claims a vast investigative purpose. Wiretaps themselves
could little achieve the investigative goals stated in the government's application. The government
may not cast its investigative net so far and so wide as to manufacture necessity in all
circumstances. Doing so would render the requirements of § 2518 nullities."

U. S. v. Blackmon, 273 F.3d 1204, 1211 (9th Cir. 2001).

There are no techniques or combination of techniques guaranteed, or even reasonably

certain, to provide sufficient information to prosecute all known and unknown members of the

asserted conspiracy or to arrest all persons responsible for the importation and distribution of the

drugs set forth in the affidavit.

A wiretap might make it easier - - but convenience is not the standard.

The expansive list of sub-goals set forth in Paragraph 130 on  Pages 46 and 47 of the

Affidavit can be accomplished through the use of Pen Registers and Trap and Trace devices

and Geo-location.  The affidavit is careful to credit those investigative techniques as useful

(Paragraphs 114-116, P. 43-44 and Paragraphs 117-120, P. 44-45), but notes with boilerplate

language that Geo-location by itself won't do the job (Paragraph 120, Page 45).

With regard to use of Pen Registers and Trap and Trace devices, the Affidavit makes the

stunning admission that nothing short of a wiretap will "never yield the content of conversations"

6

(Exhibit "2", Paragraph 116, P. 44)[4].

That is  true in each and every case of any kind involving a telephone.

By employing that reasoning, under no circumstances  would any evidence discovered through the use of a wiretap ever be suppressed on lack of necessity.

### Conclusion

The Government cannot, as it has done here,  simply assert broad investigative goals, *i.e.*, ("...prosecute...everyone...to the fullest extent possible") as justification for such an intrusion, noting that nothing short of wiretapping will reveal the contents of conversations.  That allows the exception (intrusion) to swallow the rule (privacy).

Less intrusive means were available, including monitoring the social media accounts (such as Facebook) of individuals suspected of involvement in criminal activity, interviews of arrestees, interviews of informants, searches of vehicles of arrestees, searches of residences pursuant to warrants, undercover buys, controlled purchases, consensually-monitored telephone conversations, installation of global positioning satellite transmitters, pen registers/trap and trace devices, and the receipt of subscriber information from telecommunication service providers.

 There is no reason the combined use of the pen registers/trap and trace devices in conjunction with obtaining subscriber information for the telephone numbers identified , cell tower information, and G.P.S. information that all participants could have been identified. From there, there is no reason why, through use of surveillance, searches, and  interviews roles and relative culpability, if any, could be established.

---

[4]The statement is dubious in any event; interviews, consensually-monitored calls  and questions pursuant to Grand Jury subpoenas can reveal the content of conversations as well.

Such a combination of methods, however appropriate, was nevertheless not pursued - - because wiretaps were faster - - but not, by any stretch of the imagination, because wiretaps were "necessary".

In  any drug trafficking investigation, the use of any less intrusive means of investigation, or even the use of wiretaps, will not reveal every person involved in a drug trafficking organization. In any such investigation, detection of those involved in surveillance will compromise the investigation. In any such investigation, information obtainable from the less-intrusive techniques will have their limitations. If that were enough, the necessity requirement becomes a mere formality. The "need" to avoid inconveniences associated with less-intrusive measures does not satisfy the necessity standards.


Respectfully submitted,



S/Fred Randolph Lynn
Fred Randolph Lynn, OBA # 15296
907 South Detroit Avenue, Suite 1330
Tulsa, Oklahoma 74120-4305
(918) 693-8299
fredrandolphlynn@gmail.com

Attorney for Mr. Phillips

**Proof of Service**

I hereby certify that on this 15th day of October 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) all counsel of record registered with the CM/ECF system.

S/Fred Randolph Lynn